IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ALLEGHENY WOOD PRODUCTS, INC.,
a West Virginia Corporation,

                    Plaintiff,

v.                              //   CIVIL ACTION NO. 1:09CV149
                                     (Judge Keeley)

MARATHON OIL COMPANY, a Delaware
Corporation licensed and authorized
to do business in the State of
West Virginia,

                    Defendant.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51],
AND DISMISSING CASE WITH PREJUDICE

## I.   INTRODUCTION

Pending before the Court are the cross-motions for summary
judgment of the plaintiff, Allegheny Wood Products, Inc. ("AWP"),
and the defendant, Marathon Oil Company ("Marathon").  For the
reasons that follow, the Court **GRANTS** Marathon's motion for summary
judgment (dkt. no. 48), **DENIES** AWP's motion for summary judgment
(dkt. no. 51), and **DISMISSES** this case **WITH PREJUDICE**.

## II.   FACTUAL BACKGROUND

This case arises from failed oil and gas leasing negotiations
between Marathon, AWP, and a group of loosely affiliated individual
landowners known as the Preston County Consortium ("PCC").  In the
Fall of 2008, Marathon negotiated with several owners of lands
regarding their oil and gas interests in the Marcellus Shale, which

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51],
AND DISMISSING CASE WITH PREJUDICE**

"is a sedimentary rock formation" containing "significant quantities of natural gas" and extending from southern New York into portions of West Virginia. Daniel J. Soeder & William M. Kappel, <u>Water Resources and Natural Gas Production from the Marcellus Shale</u>, U.S. Geological Survey Fact Sheet, 2009-3032 (2009), http://pubs.usgs.gov/fs/2009/3032/pdf/FS2009-3032.pdf. Marathon conducted these negotiations with AWP and Nils Nichols ("Nichols"), an individual landowner in Preston County, West Virginia.

**A.    Marathon's Negotiations with AWP**

Evidence of Marathon's negotiations with AWP is found in email exchanges from September and October of 2008. For example, on September 19, 2008, Michael Beckett ("Beckett"), a Mason Dixon Energy landman working on behalf of Marathon, sent an email to Kelly Wingard ("Wingard"), an AWP representative. <u>See</u> Email from Michael Beckett, Project Manager Mason Dixon Energy, Inc., to Kelly Wingard, General Counsel, Allegheny Wood Products, Inc. (Sept. 19, 2008, 12:20 P.M. E.D.T.) (dkt. no. 48-5). Beckett attached to this email a rough draft leasing agreement that included proposed terms for leasing AWP's oil and gas interests in Preston County, West Virginia. <u>See</u> <u>id.</u> Beckett also indicated that any proposed leases

2

for Tucker, Randolph, and Fayette counties would resemble the rough draft, and that Marathon would be willing to "step up to the plate on the dollars that were previously discussed, depending on the rest of the terms and conditions of the lease." Id.

A few days later, on September 23, 2008, Beckett met with representatives from AWP. See Email from Michael Beckett, Project Manager Mason Dixon Energy, Inc., to Donald L. Schulte, Marathon Advanced Senior Land Professional (Sept. 24, 2008, 11:30 A.M. E.D.T.) (dkt. no. 48-7). Following that meeting, Beckett informed Donald L. Schulte ("Schulte"), a Marathon Advanced Senior Land Professional, that AWP's representatives had requested changes to the rough draft, and suggested that Schulte draft an addendum to address AWP's concerns. See Emails (dkt. nos. 48-9). Despite this suggestion and subsequent inquiries from Beckett, direct communications and negotiations between AWP and Marathon did not advance further. See Pl.'s Resp. in Opp. to Def.'s M.S.J. at 7-8 (dkt. no. 52).

**B.   Marathon's Negotiations with Nils Nichols**

Marathon also conducted negotiations with Nichols, the de facto representative of the PCC. See Email from Donald L. Schulte, Marathon Advanced Senior Land Professional, to Nils Nichols (Oct.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], AND DISMISSING CASE WITH PREJUDICE

2, 2008) (5:27 P.M. E.D.T. (dkt. no. 48-4).  In a document dated October 6, 2008, Shulte signed a putative lease purchase agreement ("October Agreement") that he sent to Nichols (dkt. no. 48-1). Nichols signed it on October 9, 2008.

The substantive provisions of the October Agreement state:

> Dear Mr. Nichols:
>
> This letter will serve to set forth those certain verbal agreements made between Marathon Oil Company (hereinafter "Marathon") and your group of mineral owners of certain oil and gas rights in portions of Fayette County, Pennsylvania and Preston County and other counties in West Virginia (hereinafter the "Preston County Consortium").  Marathon proposes to enter into with you this binding letter agreement (the "Agreement") by which Marathon would acquire oil and gas leases from each member of the Preston County Consortium, under the following terms and conditions:
>
> 1.   The Preston County Consortium acreage is more fully defined on Exhibit "A" attached hereto and made a part hereof, (the "Acreage").
>
> 2.   The term of this Agreement shall expire on December 31, 2008, at which time Marathon shall have no further obligations to accept any oil and gas leases from the Preston County Consortium.  During the term of this Agreement, each member of the Preston County Consortium shall have an opportunity to execute an oil and gas lease on its individual Acreage at the

terms agreed to in this Agreement, on a form similar to that attached hereto as Exhibit "B" with other provisions added or deleted as mutually agreed to as between Marathon and the Preston County Consortium.

3.  In accordance with our discussions, Marathon and the Preston County Consortium have agreed to the following sliding scale payment schedule for the payment of bonus considerations, upon confirmation of title, to each respective Lessor in the Preston County Consortium that leases their respective Acreage to Marathon. The following is the sliding scale payment schedule:

    i.   At the time of execution of an oil and gas lease in favor of Marathon and covering Acreage owned by a member of the Preston County Consortium, Mason Dixon Energy, on behalf of Marathon, will issue an Order of Payment (as further described in Article 4 below) that specifies payment to each executing Lessor the sum of Eight Hundred Dollars ($800.00) per net mineral acre so leased, hereinafter called the "Initial Consideration".

    ii.  As specified in Article 5. below, if the total number of acres leased by Marathon from the Preston County Consortium exceeds Six Thousand Seven Hundred net mineral acres (6,700) but is less than Ten Thousand net mineral acres (10,000), Marathon shall pay each Lessor an additional sum of Seven Hundred

Fifty Dollars ($750.00) per net mineral acre so leased for a total bonus consideration of One Thousand Five Hundred Fifty Dollars ($1,550.00) per net mineral acre.

iii. As specified in Article 5. below, if the total number of acres leased by Marathon from the Preston County Consortium is Ten Thousand net mineral acres (10,000) or more, but is less than Twenty Thousand net mineral acres (20,000), Marathon shall pay each Lessor an additional sum of One Thousand Two Hundred Fifty Dollars ($1,250.00) per net mineral acre so leased for a total bonus consideration of Two Thousand Fifty Dollars ($2,050.00) per net mineral acre.

iv. As specified in Article 5. below, if the total number of acres leased by Marathon from the Preston County Consortium is at least Twenty Thousand net mineral acres (20,000), Marathon shall pay each Lessor an additional sum of Two Thousand Fifty Dollars ($2,050.00) per net mineral acre so leased for a total bonus consideration of $2,850.00 per net mineral acre. In determining whether the figure of at least 20,000 net mineral acres has been reached, the lands of Allegheny Wood Products, Inc., a member of the Preston County Consortium, shall be included for purposes of making that calculation. Should Allegheny Wood Products fail to conclude a lease with Marathon in the time period

under consideration herein, the Preston County Consortium is entitled within the terms of this Agreement, to add additional acreage from within Preston County (excluding Union District) sufficient to provide Marathon with a total of at least 20,000 net mineral acres.

v.      The total bonus amount identified in either Article 3. ii., 3. iii., or 3. iv., whichever is the case, is called the "Final Consideration."

vi.     Marathon shall acquire the Acreage offered by the Preston County Consortium up to a maximum of Twenty Six Thousand (26,000) net acres, not counting the acreage offered by Allegheny Wood Products, at the rate identified in Article 3.iv. Acquiring any additional amount of acreage above this amount shall be at Marathon's sole option.

4.      Marathon has contracted with Mason Dixon Energy ("MDE") to represent it in the Appalachian Basin. MDE will diligently prepare all oil and gas leases, and will diligently conduct title confirmation of the mineral interest owned by each Lessor of the Preston County Consortium. As stated in Article 3.i., MDE will issue an Order of Payment, in the form attached hereto as Exhibit "C", for the Initial Consideration directly to each Lessor. Payment of the Initial Consideration to each Lessor member of the Preston County Consortium will be made by MDE within ninety days (90) after execution of both

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51],
AND DISMISSING CASE WITH PREJUDICE**

the Order of Payment and associated Oil
and Gas Lease or completion of its title
confirmation, whichever is the earlier.
As title is confirmed, MDE is prepared to
make timely and continual payments to
each respective Lessor.

5.    At the later of either the expiration of
the term of this Agreement or upon
completion of MDE title confirmation as
to all Acreage so leased, Marathon and
you shall determine and agree upon the
final amount of Acreage leased under the
terms and conditions of this Agreement.
MDE shall use its best efforts to
complete title confirmation to all
Acreage on or before February 28, 2009.
Upon agreement as to the final actual net
mineral acres so leased, Marathon shall
make payment of the Final Consideration
directly to each respective Lessor of the
Preston County Consortium. All payments
of the Final Consideration shall be made
by Marathon directly to each Lessor
within Thirty (30) days after reaching
agreement on the final amount of Acreage
so leased.

If you are in agreement with the terms and
conditions outlined above, please execute this
Letter Agreement in the space provided below
and return one executed copy to me at the
letterhead address. Also, please fax an
executed copy to 713-499-6720. When executed
by you, this Letter Agreement will inure to
the benefit of, and be binding upon, Marathon
and Nils Nichols, and to each of their
respective heirs, successors and assigns, and
Nils Nichols shall immediately present the
terms and conditions of this Agreement to the
Preston County Consortium, and recommend

8

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], AND DISMISSING CASE WITH PREJUDICE**

> acceptance hereof.
>
> This proposal will expire at 4:00 PM CDT on October 14, 2008, unless accepted by you sooner or extended in writing by Marathon.
>
> If you have any questions, please do not hesitate to call me at 713-296-2335.
>
> Sincerely,
>
> /s Donald L Schulte
> Donald L. Schulte
> Advanced Senior Land Professional
>
> **AGREED TO AND ACCEPTED THIS 9th DAY OF OCTOBER, 2008;**
>
> By: /s Nils Nichols
> Printed Name: Nils Nichols

October Agreement (dkt. no. 48-1) (emphasis in original). Schulte attached Exhibits A, B, and C to the October Agreement. Exhibit A lists approximately 21,000 acres of land, but does not include any acreage owned by AWP.[1]

**C.   Marathon's Withdrawal from the October Agreement and AWP's Response**

Following all this, in a letter dated October 21, 2008, Schulte informed Nichols that Marathon had withdrawn "its offer to

---

[1]   Exhibit B (dkt. no. 48-1) consists of a sample "paid up" oil and gas lease.  Exhibit C (dkt. no. 48-1) is an "order of payment" form.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51],
AND DISMISSING CASE WITH PREJUDICE**

lease the Preston County Consortium under the terms and conditions

of that certain letter agreement dated October 6, 2008." Letter

from Donald L. Schulte, Marathon Advanced Senior Land Professional,

to Nils Nichols (Oct. 21, 2008) (dkt. no. 48-11). Schulte also

telephoned John C. Crites ("Crites"), Chairman of the Board of AWP,

to inform him of this development. See Email (dkt. no. 48-10).

Approximately two months after Marathon's withdrawal from the

October Agreement, Crites, on behalf of AWP, sent a letter to

Marathon dated December 23, 2008. See Letter from John W. Crites

("Crites"), Chairman of the Board, Allegheny Wood Products, Inc.,

to Donald L. Schulte, Marathon Advanced Senior Land Professional

(Dec. 23, 2008) (dkt. no. 48-12) ("December 23rd letter"). In that

letter, Crites asserts that, under the terms of the October

Agreement, AWP had until December 31, 2008, to execute an oil and

gas lease, and that AWP was accepting Marathon's "offer to lease

the oil and gas on the lands of Allegheny Wood Products in Preston

County and other counties in West Virginia and in Fayette County,

Pennsylvania." Id. Crites also signed an oil and gas lease on

behalf of AWP, which he enclosed with the letter. Under the terms

of the putative lease, Marathon would become obligated to lease the

acreage set forth in an attached exhibit, "Exhibit A." Exhibit A

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], AND DISMISSING CASE WITH PREJUDICE

of the putative lease lists approximately 46,000 acres of AWP land in West Virginia and Fayette County, Pennsylvania. Marathon did not sign or honor the lease tendered by AWP.[2]

Based on Marathon's October 21, 2008, withdrawal from the October Agreement, AWP asserts that Marathon committed an anticipatory breach of contract. See Homeland Training Center, LLC v. Summit Point Automotive Research Center, 594 F.3d 285, 294 (4th Cir. 2010). AWP also contends that it granted Marathon an opportunity to cure the anticipatory breach by tendering a lease, and that Marathon's refusal to honor or execute it constitutes a breach of contract.

### III. LEGAL STANDARD

Under Fed. R. Civ. P. 56, "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admission of file, together with any affidavit, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986). When ruling on a motion

---

[2] Although the lease AWP tendered to Marathon purported to cover approximately 46,000 acres of land (dkt. no. 48-12), AWP's complaint asserts that Marathon has an obligation to lease 33,911.80 acres of its land (dkt. no. 5-1).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51],
AND DISMISSING CASE WITH PREJUDICE**

for summary judgment, a court reviews all the evidence in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (on a motion for summary judgment, "[t]he evidence of nonmovant is to be believed, and all justifiable inferences must be drawn in his favor." (internal quotation mark omitted)).

## IV.  DISCUSSION

AWP asserts that it has a right to enforce the October Agreement as a third-party beneficiary.  Marathon contends that AWP's lands were purposely excluded from the October Agreement, and that Marathon has no contractual obligation to lease AWP's lands. The parties agree that the October Agreement is clear and unambiguous, and that the parol evidence rule precludes the Court from considering extrinsic evidence.  Both, however, also cite to extrinsic evidence in support of their arguments.

### A.    The October Agreement

West Virginia law indisputably governs this dispute.  Under West Virginia law, contract formation requires "a complete meeting of the minds on all material matters, leaving nothing for future negotiations." <u>Allen v. Simmons</u>, 125 S.E. 86, 88 (W. Va. 1924).

12

"'Generally, the existence of a contract is a question of fact for the jury.'" Ruckdeschel v. Falcon Drilling Co., L.L.C., 693 S.E.2d 815, 820 (W. Va. 2010) (quoting Syl. Pt. 4, Cook v. Heck's Inc., 342 S.E.2d 453, 457 (W. Va. 1986)).  The determination of what constitutes a contract, and the application of an unambiguous writing, however, present questions of law.  See Croft v. TBR, Inc., 664 S.E.2d 109, 111 (W. Va. 2008) (citations omitted); Williams v. Precision Coil, Inc., 459 S.E.2d 329, 339 n. 18 (W. Va. 1995).  A court must apply an unambiguous writing according to the "'plain and ordinary meaning'" of its terms.  Dan's Carworld, LLC v. Serian, 223 W. Va. 478, 483, 677 S.E.2d 914, 919 (W. Va. 2009) (citing Supervalu Operations, Inc. v. Center Design, Inc., 524 S.E.2d 666, 670 (W. Va. 1999) (per curiam) (internal citation omitted)).  If a contract contains an ambiguity, however, a court may consider extrinsic evidence to determine the parties' intent. See Fraternal Order of Police, Lodge No. 69 v. City of Fairmont, 468 S.E.2d 712, 716 n.7 (W. Va. 1996).

West Virginia's third-party beneficiary statute states:

> If a covenant or promise be made for the sole
> benefit of a person with whom it is not made,
> or with whom it is made jointly with others,
> such person may maintain, in his own name, any
> action thereon which he might maintain in case

> it had been made with him only, and the
> consideration had moved from him to the party
> making such covenant or promise.

W. Va. Code § 55-8-12.  Under this statute, "an action may be
maintained if the contract is made and intended for the benefit of
a class of persons definitely and clearly shown to come within the
terms of the contract."  United Dispatch, Inc. v. E.J. Albrecht
Co., 62 S.E.2d 289, 296 (W. Va. 1950).

Here, AWP asserts that, as a member of the PCC, it has third-
party standing to enforce the October Agreement and seek damages
for Marathon's breach.  To support this position, AWP contends that
Exhibit A does not exclusively define the term "Acreage," and that
Marathon agreed to lease all of AWP's lands when it excluded them
from Exhibit A, and exempted AWP's lands from the 26,000 acre
maximum Marathon was willing to lease from other PCC members.  AWP
asserts further that it was a member of the PCC because it was the
only one with lands in Pennsylvania,[3] and because the October
Agreement specifically describes it as being a member.  See October
Agreement at ¶ 3(iv).

Based on the absence of AWP's lands from Exhibit A, however,

---

[3]  Ironically, however, AWP's complaint states that "AWP does
not own any oil and gas mineral interests in Fayette County,
Pennsylvania[.]"  Pl.'s Compl. at 1, ¶ 3 (dkt. no. 5-1).

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51],
AND DISMISSING CASE WITH PREJUDICE**

Marathon contends that it purposely and unambiguously excluded AWP's lands from the scope of the term "Acreage," and that, accordingly, AWP never received an option to lease its lands to Marathon. Marathon further contends that the October Agreement lists AWP as a member of the PCC only for the purpose of explaining how it would calculate bonuses payable to other PCC members.

The October Agreement is clear and unambiguous. See <u>Croft</u>, 664 S.E.2d at 111. Moreover, based on its plain terms, AWP did not receive a third-party option to lease its lands to Marathon.

The October Agreement grants "each member of the [PCC] . . . an opportunity to execute an oil and gas lease on its individual Acreage[.]" October Agreement at ¶2 (dkt. no. 48-1). It also provides that "[t]he [PCC] acreage is more fully defined on Exhibit 'A,' . . . (the 'Acreage')." <u>Id.</u> at ¶ 1. Only PCC members holding "Acreage," therefore, had an opportunity to lease their lands to Marathon. Exhibit A does not include any AWP lands. Notwithstanding AWP's assertion that Exhibit A does not "exclusively" define the term "Acreage," nothing in the October Agreement expands the scope of that term to include any of AWP's lands.

Although the October Agreement describes AWP as a member of

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51],
AND DISMISSING CASE WITH PREJUDICE**

the PCC, it does so within the context of provisions explaining how bonus payments would be calculated for other PCC members. More specifically, the October Agreement states that "the lands of [AWP]," a member of the [PCC], shall be included for purposes of making that calculation." Id. at ¶ 3(iv). While this paragraph designates AWP as a member of the PCC, under the October Agreement membership in the PCC is not dispositive: to receive the opportunity described, a PCC member must also hold "Acreage." While paragraph 3(iv) conclusively establishes that AWP was a member of the PCC, it does not establish that AWP's lands were within the scope of the term "Acreage."

AWP also points to the October Agreement's exclusion of its lands from the 26,000 acre cap, and asserts that this exclusion establishes that Marathon agreed to lease all of its lands. See id. at ¶ 3(vi). A careful reading of the entire October Agreement, however, leads to the conclusion that this provision does no more than set the maximum acreage Marathon agreed to lease from members of the PCC, excluding AWP. At most, subsections (iv) and (vi) of paragraph 3 suggest that Marathon contemplated leasing from AWP in a separate agreement, and that it would not cap the acreage it leased from AWP at 26,000 acres. This reference to AWP, thus, does

16

ALLEGHENY WOOD PRODUCTS, INC. V. MARATHON OIL CO.        1:09CV149

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51],
AND DISMISSING CASE WITH PREJUDICE**

not establish that AWP's acreage was within the scope of the defined term "Acreage."

In summary, for AWP to prevail on its breach of contract claim, it must establish that the term "Acreage" encompassed the lands of AWP.  As discussed earlier, Exhibit A, which more fully defines this term, does not include any AWP lands.  Moreover, none of the October Agreement's other provisions expand the scope of the term to include lands held by AWP.  Had Marathon agreed to lease AWP's lands, it could have included them in Exhibit A, or drafted other provisions stating its assent to leasing some or all of AWP's lands.

The Court must enforce the October Agreement as the parties wrote it.  <u>See</u> <u>Cabot Oil & Gas Corp. v. Huffman</u>, __ S.E.2d __, 2010 WL 4398151, at *9 (W. Va. 2010).  Here, the clear and unambiguous provisions of the October Agreement did not grant AWP an enforceable option to lease its lands to Marathon.  Simply put, AWP's lands are not within the scope of the defined term "Acreage." <u>See</u> <u>Matsushita</u>, 475 U.S. at 587; <u>Liberty Lobby, Inc.</u>, 477 U.S. at 255.

**B.    The Extrinsic Evidence**

AWP's contract claim fails not only under the plain terms of

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51],
AND DISMISSING CASE WITH PREJUDICE**

the October Agreement, but also when the extrinsic evidence is considered. This is because none of that evidence establishes that the parties intended for the term "Acreage" to include any of AWP's lands. At bottom, the extrinsic evidence does not support a reasonable inference that Marathon ever agreed to lease AWP's lands.

To provide extrinsic support for its claim, AWP cites to a series of emails exchanged between Schulte and Nichols on October 9, 2008 (dkt. no. 52-3), as well as an excerpt from an internal Marathon report (dkt. no. 52-5). With regard to the emails, on October 9, 2008, Nichols sent an email to Schulte, which, in pertinent part, stated:

> Don,
> I think we are about there. A couple of last points and a question.
> In the first paragraph, line 3, [AWP] has about 975 acres in Fayette County, PA. Accordingly, I think our previous wording (i.e., "group of mineral owners and gas rights (hereinafter the "Preston County Consortium") is more accurate than the current wording "portions of Preston County and other counties in West Virginia".
> . . .

Email from Nils Nichols, to Donald L. Schulte, Marathon Advanced Senior Land Professional (Oct. 9, 2008 10:30 A.M. E.D.T.) (dkt. no.

ALLEGHENY WOOD PRODUCTS, INC. V. MARATHON OIL CO.        1:09CV149

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51],
AND DISMISSING CASE WITH PREJUDICE

52-2).  Schulte responded as follows:

> Nils:
> Great, we are there!  Thanks for calling and
> working out the law few word-smithing details.
> . . .

Email from Donald L. Schulte, Marathon Advanced Senior Land

Professional, to Nils Nichols (2:35 P.M. E.D.T.) (dkt. no. 52-3).

After receiving this email, Nichols responded as follows:

> Don,
> Quick question - - obviously Exhibit A (the
> acreage) has evolved from the one you have
> attached to the document.  I need to update it
> a little more at this point.  I just want to
> make sure that is understood.
> . . .

Email from Nils Nichols, to  Donald L. Schulte, Marathon Advanced

Senior Land Professional (Oct. 9, 2008 3:16 P.M. E.D.T.) (dkt. no.

52-3).

     AWP contends that Schulte's response to Nichols's email, and

Nichols's subsequent inquiry about updating Exhibit A, establish

that the parties intended for AWP to be included as a member of the

PCC and as a beneficiary of their agreement.  While these emails

may suggest that the parties intended for AWP to be included as a

member of the PCC, and that Nichols believed Exhibit A should be

updated further, they do not establish that Nichols and Marathon

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51],
AND DISMISSING CASE WITH PREJUDICE**

ever mutually agreed that AWP's lands would constitute "Acreage."

After all, when Nichols signed the October Agreement, Exhibit A did

not include the lands of AWP.  These emails, thus, cannot support

a reasonable inference that the contracting parties intended for

AWP to receive an enforceable option under the October Agreement.

AWP also cites to an excerpt from an internal Marathon report.

<u>See</u> Appalachian Basin Marcellus Shale Update, Land Acquisition

Status  (dkt. no. 52-5).  That report, in pertinent part, states:

> Land Acquisition Status
> * Current Acreage Leased – 67,173.77 acres.
> * Total Spend [sic] – $75,373,068.82 – $1,122.06 per net acre average
> * Organic leasing efforts have been suspended. Retracted over 300 lease offers and suspended our public relations campaign.
> * **Rescinded our agreement with the Nils Nichols consortium which covered 46,000 acres in Fayette County, PA and Preston County, WV.**
> . . .

<u>Id.</u> (emphasis added).  According to AWP, this excerpt establishes

that Marathon intended for the October Agreement to cover a total

of 46,000 acres, not the 21,331 acres listed in Exhibit A.   <u>See</u>

Pl.'s Resp. in Opp. to Def.'s M.S.J. 11 (dkt. no. 52).

Although this excerpt may suggest that Marathon intended for

the October Agreement to cover more than the 21,331 acres listed in

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], AND DISMISSING CASE WITH PREJUDICE**

Exhibit A, the extrinsic record does not provide additional insight into whether Marathon ever agreed to lease any, let alone all, of AWP's lands. AWP's complaint, for example, alleges that Marathon was obligated to lease 33,911.80 acres of its land. When adding that acreage to the 21,331 acres listed in Exhibit A, the combined total acreage is 55,242.8. The incongruence between this combined total and the 46,000 acres referenced in the Marathon report is fatal to any inference that Marathon intended to lease AWP's lands. In other words, if the 21,331 acres listed in Exhibit A were subtracted from the 46,000 acres referenced in the report, which of the remaining 24,669 acres were lands of AWP? Some, none, or all? The extrinsic record does not say.

Moreover, given that the October Agreement explicitly covered the 21,331 acres set forth in Exhibit A, AWP cannot credibly assert that all 46,000 acres mentioned in the report refer to AWP's lands. Thus, to the extent the report could support an inference that Marathon intended to lease more than the acreage listed in Exhibit A, it sheds no light on whether Marathon and Nichols intended for AWP's lands to constitute "Acreage."[4]

---

[4] This report was drafted in November of 2008 and presented during an internal Marathon meeting. See Pl.'s Resp. in Opp. to Def.'s M.S.J. at 10-11 (dkt. no. 52). There is no indication that

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 48], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 51], AND DISMISSING CASE WITH PREJUDICE**

In summary, the extrinsic evidence fails to support a reasonable inference that Marathon and Nichols intended for the term "Acreage" to include AWP's lands, or that Marathon agreed to lease any of AWP's lands. Even when the extrinsic evidence is viewed in the light most favorable to AWP, and all reasonable inferences are drawn in its favor, AWP fails to establish that Marathon had an obligation to lease its lands under the October Agreement. A reasonable finder of fact, therefore, could not return a verdict in AWP's favor. See Liberty Lobby, Inc., 477 U.S. at 248.

### V. CONCLUSION

For the reasons discussed, the Court **GRANTS** Marathon's motion for summary judgment (dkt. no. 48), **DENIES** AWP's motion for summary for summary judgment (dkt. no. 51), and **DISMISSES** this case **WITH PREJUDICE**.

It is so **ORDERED**.

The Court directs the Clerk to enter a separate judgment order and to transmit copies of both orders to counsel of record.

DATED: March 25, 2011.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

---

Schulte or Beckett drafted it.